UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| TIMOTHY HEADRICK, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 4:18-cv-1696-NCC |
| DALE GLASS, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of plaintiff Timothy Headrick for leave to commence this civil action without prepayment of the required filing fee. Having reviewed the motion and the financial information submitted in support, the Court has determined to grant the motion, and assess an initial partial filing fee of $2.38. *See* 28 U.S.C. § 1915(b)(1). In addition, for the reasons discussed below, the Court will partially dismiss the complaint, and direct the Clerk of Court to issue process upon the non-frivolous portions of the complaint.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these

monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of the instant motion, plaintiff submitted an inmate account statement showing an average monthly deposit of $11.88, and an average monthly balance of $8.81. The Court will therefore assess an initial partial filing fee of $2.38, which is twenty percent of plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts, but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

*Pro se* complaints are to be liberally construed, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), but they still must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to

"assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004).

## The Complaint

Plaintiff is a pretrial detainee at the St. Louis City Justice Center.[1] He brings this action pursuant to 42 U.S.C. § 1983 against six defendants: Dale Glass (the St. Louis Corrections Commissioner); Adrian Barnes (the St. Louis City Justice Center Superintendent); Dr. Fe Fuentes, Nurse Jones, Nurse Steph, and Corrections Officer Felita Bain. He sues the defendants in their official and individual capacities. He alleges as follows.

On April 20, 2018 at approximately 8:00 p.m., while in the recreation area, plaintiff slipped and fell. He felt and heard cracking in his foot. He could not walk, and did not have sensation in his leg. The officer on the scene notified medical staff.

Approximately 10 to 13 minutes later, defendants Nurse Jones and Nurse Steph arrived, "made [plaintiff] hop to the wheelchair," and escorted him to the medical department. (Docket No. 1 at 3). Nurses Jones and Steph assessed plaintiff's ankle, and gave him four Ibuprofen tablets, an Ace bandage, and an ice pack. Dr. Fuentes was notified, and "her call was to place me back in General Population" and to not allow plaintiff to have crutches or a wheelchair. *Id.* Plaintiff was escorted back to his housing unit. Nurse Steph told plaintiff that the x-ray technician would arrive in about four hours. Plaintiff had to hop on one foot to and from the medical department to have x-rays taken, and then later to get his food tray.

---

[1] Review of Missouri Case.net shows that plaintiff is a defendant in four criminal cases that are currently pending in the Circuit Court for the City of St. Louis. *See State v. Timothy Headrick*, No. 1822-CR00012-01 (22nd Jud. Cir. 2018); *State v. Timothy Headrick*, No. 1822-CR00013-01 (22nd Jud. Cir. 2018); *State v. Timothy Headrick*, No. 1822-CR00014-01 (22nd Jud. Cir. 2018); *State v. Timothy Headrick*, No. 1822-CR00015-01 (22nd Jud. Cir. 2018). In these cases, plaintiff is facing felony and misdemeanor charges, including first-degree robbery, second degree burglary, property damage, stealing, attempted first-degree robbery, and armed criminal action.

Upon review of his x-rays, plaintiff was taken to St. Louis University Hospital, where it was determined his ankle was broken in two places. He was prescribed "some medication," but Dr. Fuentes would not allow plaintiff to have it. She gave him Tylenol #4 instead. Plaintiff filed a grievance to complain about inadequate medical attention and his placement in general population. In retaliation, Dr. Fuentes took plaintiff off all of his pain medication. This occurred approximately four days after plaintiff left the hospital, and he suffered excruciating pain. *Id.* at 4. When plaintiff asked two nurses for pain medication, they told him that he was supposed to be able to have Tylenol #4, but that Dr. Fuentes had suddenly taken him off it. Dr. Fuentes also refused to give plaintiff a bottom bunk pass.

Plaintiff alleges that defendant Felita Bain is the grievance officer, Adrian Barnes is the Superintendent, and Dale Glass is the Corrections Commissioner. Plaintiff states that none of these individuals did anything to correct the violations of his rights, and that they therefore promoted and assisted each other.

## Discussion

The Court first addresses plaintiff's individual capacity claims against defendants Glass and Barnes. Plaintiff does not allege that either Glass or Barnes was directly involved in or personally responsible for specific violations of his constitutional rights. "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights). Plaintiff's allegations against Glass and Barnes sound in *respondeat superior*. However, such claims are not cognizable under § 1983. *Boyd v. Knox*, 47

4

F.3d 966, 968 (8th Cir. 1995). The Court concludes that plaintiff has failed to state a cognizable claim for relief against either Glass or Barnes, and will therefore dismiss these defendants from this action.

Similarly, plaintiff does not allege that defendant Bain was directly involved in or personally responsible for any incident that harmed him. Instead, plaintiff alleges that he filed grievances, and that Bain was the grievance officer. As explained above, "[l]iability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell*, 909 F.2d at 1208. To the extent plaintiff can be understood to allege that Bain is liable to him because she committed wrongdoing related to his grievances, such allegations do not state a claim of constitutional significance. There is no federal constitutional right to have a prison grievance procedure, and neither a state law nor a state policy creates one. Therefore, if a state elects to provide a grievance mechanism, violations thereof will not give rise to a § 1983 claim. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (prison officials' failure to process or investigate grievances, without more, is not actionable under § 1983; grievance procedure is procedural right only and does not confer substantive right on inmate). The Court will therefore dismiss Bain from this action.

The Court turns to plaintiff's allegations against Nurse Jones and Nurse Steph. Plaintiff can be understood to allege that they denied him adequate medical care. Because plaintiff is a pretrial detainee, his claims of inadequate medical care are analyzed under the Fourteenth Amendment rather than the Eighth Amendment. *Stickley v. Byrd,* 703 F.3d 421, 423 (8th Cir. 2013). However, because the Fourteenth Amendment gives pretrial detainees "at least as great protection" as the Eighth Amendment gives convicts, courts apply the identical standard as that applied to claims of inadequate medical care brought by convicts. *Crow v. Montgomery*, 403

5

F.3d 598, 601 (8th Cir. 2005) (quoting *Owens v. Scott County* Jail, 328 F.2d 1026, 1027 (8th Cir. 2003)).

To establish that a denial of medical care rises to the level of a constitutional violation, plaintiff must plead facts that show that the defendant acted with deliberate indifference. *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011). The test for deliberate indifference consists of two prongs. *Id.* First, the plaintiff must show that he suffered from an objectively "serious medical need." *Id.* A "serious medical need" is "one that has been diagnosed by a physician requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (internal citation omitted). Second, the plaintiff must show that the defendant actually knew of, and yet deliberately disregarded, that need. *Schaub*, 638 F.3d at 914.

Deliberate disregard is a mental state "equivalent to criminal-law recklessness, which is 'more blameworthy than negligence,' yet less blameworthy than purposely causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Id.* at 914–15 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835, 839–40 (1994)). The plaintiff must show that the defendant deliberately disregarded a known risk to his health. Allegations amounting to medical malpractice or negligence, and allegations that establish only the plaintiff's disagreement with treatment decisions, do not state claims of constitutional significance. *Id., Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

None of plaintiff's allegations against Nurse Jones or Nurse Steph can be said to state a claim of deliberate indifference. Plaintiff alleges that these defendants arrived on the scene of his accident approximately 10 to 13 minutes after they were called, made him hop into a wheelchair, took him to the medical department, assessed his ankle, and gave him Ibuprofen, an

6

Ace bandage, and an ice pack. Plaintiff also alleges that Nurse Steph told him the x-ray technician would arrive in about four hours. The Court assumes that plaintiff has demonstrated that he had a serious medical need at the time of his interaction with Nurse Jones and Nurse Steph. However, plaintiff's allegations do not establish that either Nurse Jones or Nurse Steph deliberately disregarded that need. Instead, plaintiff's allegations establish that Nurse Jones and Nurse Steph responded to the scene quickly, escorted him to the medical department, provided him with medical care that was within the scope of their authority, and told him the x-ray technician would arrive later. The fact they made him hop to get to the wheelchair does not establish that they acted with a mental state equivalent to criminal-law recklessness, and moreover, plaintiff does not allege any injury resulting from hopping. Nurse Jones and Nurse Steph will be dismissed from this action.

The Court now addresses plaintiff's allegations against Dr. Fuentes. Plaintiff alleges that, during the time before he was taken to the hospital, Dr. Fuentes returned plaintiff to the general population and would not allow him to have crutches or a wheelchair, and as a result, plaintiff had to hop around on one foot. Plaintiff does not allege that he told Dr. Fuentes that he was unable to walk, that Dr. Fuentes viewed his ankle and noted obvious signs of fracture, or any other facts permitting the inference that she knew, before his hospital visit, that plaintiff's ankle was broken. Deliberate indifference must be measured by the defendant's knowledge at the time in question, not by the perfect vision of hindsight. *Schaub*, 638 F.3d at 915. In addition, plaintiff does not allege any injury or exacerbation of his condition as a result of hopping for a brief period of time. Plaintiff also alleges that he was prescribed an unidentified medication at the hospital, but Dr. Fuentes gave him Tylenol #4 instead. However, plaintiff does not allege that

Tylenol #4 was ineffective in relieving his pain. The Court concludes that these allegations do not state a claim of deliberate indifference against Dr. Fuentes.

Plaintiff also alleges that Dr. Fuentes withdrew his Tylenol #4 prescription four days after he was diagnosed with a broken ankle, leaving him to suffer in excruciating pain, and he alleges that she refused to give him a pass to allow him to have a bottom bunk. Having taken as true and liberally construed plaintiff's allegations, the Court concludes that plaintiff has adequately plead a claim of deliberate indifference under the Fourteenth Amendment, and will allow these claims to proceed against Dr. Fuentes in her individual capacity.

Plaintiff also alleges that Dr. Fuentes withdrew his pain medication to retaliate against him for filing grievances. To establish a § 1983 claim for retaliation in violation of the First Amendment, a plaintiff must allege: (1) that he engaged in a protected activity, (2) that the defendants responded with adverse action that would chill a person of ordinary firmness from continuing in the activity, and (3) that the adverse action was motivated at least in part by the exercise of the protected activity. *L.L. Nelson Enterprise Inc. v. County of St. Louis, Mo*., 673 F.3d 799, 807–8 (8th Cir. 2012) (internal quotation marks omitted). "[T]he First Amendment right to petition for redress of grievances includes redress under established prison grievance procedures." *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir. 1994) (citing *Sprouse v. Babcock*, 870 F.2d 450 (8th Cir. 1989)); *see also Nelson v. Shuffman*, 603 F.3d 439, 449-50 (8th Cir. 2010) (inmates have a right to be free from retaliation for using the prison grievance process). Here, plaintiff clearly alleges that he filed grievances concerning inadequate medical care, and that Dr. Fuentes retaliated by withdrawing pain medication he needed to relieve the severe pain caused by his broken ankle. Having taken as true and liberally construed plaintiff's allegations, the

8

Court concludes that plaintiff has adequately plead a claim of retaliation in violation of the First Amendment, and will allow this claim to proceed against Dr. Fuentes in her individual capacity.

Plaintiff's official capacity claims against Dr. Fuentes will be dismissed. Naming a government official in her official capacity is the equivalent of naming the government entity that employs her, which in this case is the City of St. Louis. To state a claim against a municipality or a government official in his official capacity, plaintiff must allege that a policy or custom of the municipality/governmental entity is responsible for the alleged constitutional violation. *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978). The instant complaint contains no allegations that a policy or custom of a governmental entity or municipality was responsible for the alleged violations of plaintiff's constitutional rights, and plaintiff therefore fails to state an official-capacity claim against Dr. Fuentes.

The Court now turns to plaintiff's "Motion Asking Court to Grant Pro Se Status." (Docket No. 6). Therein, plaintiff states he needs the Court to enter an order stating that he does not have an attorney, and is proceeding *pro se* in this action. Plaintiff explains that this will ensure the St. Louis City Justice Center allows him adequate time in the law library. The motion will be denied as moot because plaintiff does not need a Court order to proceed *pro se* in these proceedings. He is authorized to do so by federal law, which provides that "parties may plead and conduct their own cases personally." 28 U.S.C. § 1654.

Plaintiff has also filed a motion to appoint counsel. (Docket No. 2). The Court will deny the motion at this time, without prejudice. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). When determining whether to appoint counsel for an indigent litigant, the Court considers factors such as the complexity of the case, the ability of the *pro se* litigant to

9

investigate the facts, the existence of conflicting testimony, and the ability of the *pro se* litigant to present his claims. *Id.* After considering these factors, the Court concludes that the appointment of counsel is not warranted at this time. Based upon the complaint, it does not appear that this case is factually or legally complex, nor does it appear that plaintiff will be unable to investigate the facts. In addition, the motion is premature, as the defendant has yet to be served with process, and discovery has not begun. However, the Court will entertain future motions for the appointment of counsel, if appropriate, as this litigation progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis* (Docket No. 3) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $2.38 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that defendants Dale Glass, Adrian Barnes, Nurse Jones, Nurse Steph, and Felita Bain are **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that plaintiff's official capacity claims against defendant Fe Fuentes are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Appoint Counsel (Docket No. 2) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that plaintiff's Motion Asking Court to Grant Pro Se Status (Docket No. 6) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the complaint, pursuant to the service agreement the Court maintains with the St. Louis City Counselor's Office, as to defendant Fe Fuentes in her individual capacity.

A separate order of partial dismissal will be entered herewith.

Dated this 20th day of December, 2018.

/s/ Jean C. Hamiton
JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE